IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF IOWA
WESTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        Plaintiff,<br>vs.<br><br>ANGELA JOHNSON,<br><br>        Defendant. | No. CR 01-3046-MWB<br><br>MEMORANDUM OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO PROHIBIT TRIAL DUE TO UNCONSTITUTIONAL JURY SELECTION PROCEDURES |

_____

This capital case, which is set for a "penalty retrial" beginning on June 3, 2013, is before me on defendant Angela Johnson's January 7, 2013, Motion To Prohibit Trial Due To Unconstitutional Jury Selection Procedures (docket no. 944). Somewhat more specifically, Johnson seeks to prohibit her trial before a jury that is drawn pursuant to the Amended Plan For The Random Selection Of Grand And Petit Jurors For The United States District Court For The Northern District Of Iowa (Amended Plan), on the ground that it excludes the following prospective jurors: (1) citizens who do not meet the one-year residency requirement; (2) citizens who are not able to speak the English language; (3) citizens who have a pending criminal charge; (4) citizens who have a conviction of a crime punishable by imprisonment for more than a year and whose civil rights have not been restored; and (4) citizens who are not included in the jury pool because their voter registration and/or motor vehicle operator information is not updated during the years that the master jury wheel is in effect. Johnson contends that, even if these provisions comply with the requirements of the Jury Selection And Service Act (JSSA) of 1968, 28 U.S.C. § 1861 *et seq.*, they violate her rights under the

Fifth, Sixth, and Eighth Amendments to the United States Constitution by depriving her of her right to a fair and impartial petit jury selected at random and in a non-arbitrary manner from a fair cross-section of the community. In a Resistance (docket no. 959), the prosecution denies that the Amended Plan violates either the JSSA or Johnson's constitutional rights. Johnson filed a Reply (docket no. 962) in further support of her motion asserting, *inter alia*, that the prosecution's authorities are distinguishable.

It is readily apparent that the first four categories of excluded prospective jurors that Johnson challenges are, in fact, excluded by the JSSA itself. *See* 28 U.S.C. § 1865(b)(1) (excluding citizens not resident in the district for one year); *id*. at (b)(3) (excluding citizens unable to speak English); *id*. at (b)(5) (excluding convicted felons whose rights have not been restored and those charged with felonies). Johnson's constitutional challenges to these provisions are unavailing in light of prevailing authority.[1] Johnson has not convinced me that these authorities are wrong.

---

[1] *See United States v. Maskeny*, 609 F.2d 183, 192 (5th Cir. 1980) (reiterating its conclusion in *United States v. Perry*, 480 F.2d 147, 148 (5th Cir. 1973), that the one-year residency requirement does not violate the constitution under *Duren v. Missouri*, 439 U.S. 357 (1979)); *United States v. Test*, 550 F.2d 577, 594 (10th Cir. 1976) (also noting that the one-year residency requirement had been upheld and declining to revisit it); *United States v. Ross*, 468 F.2d 1213, 1215 (9th Cir. 1972) (same); *United States v. Fernanedez-Hernandez*, 652 F.3d 56, 66-67 (1st Cir. 2011) (concluding that, even in the District of Puerto Rico, where up to eighty percent of residents had little command of English, the District's plan requiring ability to speak English, as provided in § 1865(b)(3), did not violate the constitution or the JSSA, because it had previously upheld the requirement, citing *United States v. Rodríguez–Lozada*, 558 F.3d 29, 38 (1st Cir. 2009), as concluding that the English proficiency requirement was "justified by the overwhelming national interest served by the use of English in a United States court"); *United States v. Greene*, 995 F.2d 793, 795-96 (8th Cir. 1993) (agreeing with other appellate courts "that the exclusion from juror eligibility of persons charged with a felony is rationally related to the legitimate governmental purpose of guaranteeing the probity of jurors" (citing cases)); *United States v. Arce*, 997 F.2d 1123, 1127 (5th Cir. 1993) ("We agree with those courts that

Johnson makes the novel argument that the exclusion of non-English speakers, see 28 U.S.C. § 1865(a)(3), coupled with the exclusion of persons suffering from a physical infirmity that renders them incapable of satisfactory performance of jury service, *see* 28 U.S.C. § 1865(b)(4), creates a "symbiotic effect" that is so broad as to violate the Constitution and the Americans with Disabilities Act (ADA), 42 U.S.C. §§ 12131-12134. Johnson asserts that, if she had been granted funding for a statistician, which I denied, she could have demonstrated this "symbiotic effect" with statistical evidence. Johnson's "symbiotic effect" argument is clever, but also unavailing. As to denial of funding for a statistician, I note that Johnson has not identified even a single anecdotal incident in all of the jury data provided to her that shows that a person who could not speak English by reason of a physical infirmity was excluded from the petit jury wheel. Thus, I decline to indulge in her speculation that, had she been granted funding for a statistician, she could have demonstrated the claimed effect. I also note that § 1865(b)(4) excludes only persons who are "incapable, by reason of mental or physical infirmity, to render *satisfactory* jury service." (Emphasis added). Surely Johnson does not argue that the Constitution or the ADA requires inclusion of prospective jurors who *cannot* "render *satisfactory* jury service."

Johnson's last argument is that reliance on source lists comprised of registered voters and motor vehicle operators, especially when combined with the provision of the plan that the master jury wheel need only be emptied and refilled every four years, or, at the option of the clerk with approval of the Court, at two-year intervals, serves to frustrate the fair cross-section and randomness policies of the Act. Again, she asserts that, had I authorized funding for a statistician, she could have demonstrated the effect

---

excluding convicted felons from jury service does not violate the constitutional guarantee of equal protection. The government has a legitimate interest in protecting the probity of juries. Excluding convicted felons from jury service is rationally related to achieving that purpose.").

3

of this shortcoming in the Amended Plan. This argument is also unconvincing. First, as a matter of fact, the master jury wheel has been refilled every two years pursuant to the Amended Plan since at least before Johnson's original trial. Second, as the Supreme Court recognized some time ago, "[S]ome play in the joints of the jury-selection process is necessary in order to accommodate the practical problems of judicial administration." *Hamling v. United States*, 418 U.S. 87, 138 (1974) (commenting on the Southern District of California plan, which, at the time, called for refilling the master wheel every four years). Again, Johnson is responsible for her inability to do more than speculate, rather than demonstrate, that there is any unconstitutional effect from this part of the Amended Plan.

THEREFORE, Johnson's January 7, 2013, Motion To Prohibit Trial Due To Unconstitutional Jury Selection Procedures (docket no. 944) is **denied**.

**IT IS SO ORDERED**.

**DATED** this 19th day of March, 2013.

_____
MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA